Nigel Burns, Esq. SBN: 202576
Diana C. Hamlin, Esq. SBN: 279193
The Law Offices of Nigel Burns
800 West 1st Street, Suite 401-12
Los Angeles, California 90012
Telephone: (213) 687-8080
Facsimile: (213) 687-8383

Attorneys for Plaintiff.
JORGE GUZMAN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE GUZMAN, an individual;<br><br>        Plaintiff,<br><br>    vs.<br><br>UNITED STATE OF AMERICA;<br>UNITED STATES DEPARTMENT<br>OF HOMELAND SECURITY;<br>UNITED STATES IMMIGRATION<br>AND CUSTOMS ENFORCEMENT<br>AGENCY; UNITED STATES<br>DEPARTMENT OF JUSTICE;<br>UNITED STATES ATTORNEY'S<br>OFFICE FOR THE CENTRAL<br>DISTRICT OF CALIFORNIA;<br>JOSEPH AKROTIRIANAKIS, in his<br>individual capacity and as Assistant<br>U.S. Attorney, MOSES "PETE"<br>NARENSKY, in his individual<br>capacity and as an officer of U.S.<br>Immigration and Customs<br>Enforcement, KERRY FARABEE,<br>in his individual capacity and as an<br>officer of U.S. Immigration and<br>Customs Enforcement, MICHAEL<br>TRILEVSKY, in his individual<br>capacity and as an officer of the U.S.<br>Department of Homeland Security,<br>ELIZABETH RIVAS, in her<br>individual capacity and as an officer<br>of the Federal Bureau of<br>Investigation CLAUDE ARNOLD,<br>in his individual capacity and as an<br>officer of U.S. Immigration and<br>Customs Enforcement, and DOES 1-<br>10.<br><br>        Defendants. | **Case No.:** 14-5596<br><br>**COMPLAINT FOR BIVENS CLAIMS UNDER THE UNITED STATES CONSTITUTION AND FOR FEDERAL TORT CLAIMS ACT**<br><br>**[DEMAND FOR JURY TRIAL]** |

COMES NOW, Plaintiff JORGE GUZMAN ("GUZMAN") who alleges causes of action against Defendants UNITED STATES DEPARTMENT OF HOMELAND SECURITY ("DHS"); UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT AGENCY ("ICE"), UNITED STATES DEPARTMENT OF JUSTICE ("DOJ"), UNITED STATES ATTORNEY'S OFFICE FOR THE CENTRAL DISTRICT OF CALIFORNIA ("USAO"), JOSEPH AKROTIRIANAKIS ("AKROTIRIANAKIS"), MOSES PETE NARENSKY ("NARENSKY"), CHRISTOPHER FOSTER ("FOSTER"), KERRY FARABEE ("FARABEE"), MICHAEL TRILEVSKY ("TRILEVSKY"), ELIZABETH RIVAS ("RIVAS"), CLAUDE ARNOLD ("ARNOLD") and DOES 1-10, inclusive, as follows:

## **INTRODUCTION**

1.    This is an action for injunctive relief and declaratory relief and damages in that the Plaintiff was denied his rights under the Fourth, Fifth, and Fourteenth Amendments of the Federal Constitution and under California Law.  As a result of reporting a serious episode of misconduct by fellow law enforcement officers, Defendants launched a retaliatory and meritless pursuit of Plaintiff which has caused Plaintiff irretrievable damage to his professional and personal life. Plaintiff requests a jury trial.

2.    The claims herein are additionally brought pursuant to the Federal Tort Claims Act (28 U.S.C. § 2671, et. seq. and 1346(b)(1)) for money damages as compensation for loss of property and personal injuries that were caused by the misconduct of fellow law enforcement officers, inter alia, intentional infliction of emotional distress, negligent infliction of emotional distress, conversion, negligence, abuse of process, and invasion of privacy, while acting within the scope of their offices and employment, under circumstances where the Defendant United States of America, if a private person, would be liable to the Plaintiff in accordance with the laws of the State of California.

3.    All of the foregoing claims are based on the unlawful treatment of Plaintiff by Defendants UNITED STATES DEPARTMENT OF HOMELAND SECURITY ("DHS"); UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT AGENCY ("ICE"), UNITED STATES DEPARTMENT OF JUSTICE ("DOJ"), UNITED STATES ATTORNEY'S OFFICE FOR THE CENTRAL DISTRICT OF CALIFORNIA ("USAO"), JOSEPH AKROTIRIANAKIS ("AKROTIRIANAKIS"), MOSES PETE NARENSKY ("NARENSKY"), KERRY FARABEE ("FARABEE"), MICHAEL TRILEVSKY ("TRILEVSKY"), ELIZABETH RIVAS ("RIVAS"), CLAUDE ARNOLD ("ARNOLD") and DOES 1-10.  Plaintiff GUZMAN is suing in his individual capacity as an employee of the United States Department of Homeland Security and the United States Immigration and Customs Enforcement Agency.

4.    As a result of the practices of the aforementioned defendants, and each of them, Plaintiff has suffered systematic violations of his constitutional rights, his right to be free from unlawful retaliation, his right to be free from intimidation in the exercise of these rights, and his rights under California law.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 2671, 1331, 1343(a)(3), 1343(a)(4), 1346(b), and 1367, 1402(b), 2401(b), and §§2671-2680.

6.  Plaintiff has fully complied with the provisions of 28 U.S.C. § 2675 of the Federal Tort Claims Act (FTCA).

7.  This suit has been timely filed and Plaintiff has exhausted all administrative remedies.  Pursuant to 28 U.S.C. §2675(a) the claim set forth herein was presented on October 21, 2013 when Plaintiff filed Administrative Claims for money damages in sum certain using Standard Form 95 with the following federal agencies:  (1) Office of Workers' Compensation Programs (OWCP) Division of Federal Employees' Compensation; (2) U.S. Merit Systems Protection Board; (3)

Complaints Examining Unit, US. Office of Special Counsel; (4) Federal Tort Claims Act section, Torts Branch, Civil Division, U.S. Department of Justice; (5) U.S. Department of Homeland Security, Office of the General Counsel; and (6) Office of the General Counsel, U.S. Immigration & Customs Enforcement, U.S. Department of Homeland Security.

8.  Plaintiff filed Administrative Claims for a money award in a sum certain with all relevant federal agencies, including the Department of Homeland Security, Immigration and Customs Enforcement and the Department of Justice on October 21, 2013, and has not received any substantive response from any of those agencies.  Plaintiff initiated a complaint of whistleblower retaliation with the Office of Special Counsel by letter in October 2012.  That office, which has assumed the relevant duties formerly exercised by the Civil Service Commission pursuant to the Whistleblower Protection Act, as amended from time to time, has closed its case on Plaintiff's complaint as of April 2014.  Six months have passed without the agencies taking administrative action.  Plaintiff has exhausted all of his potential administrative remedies and the only forum available for redress is this court and this venue.

9.  Venue is appropriate in the Central District of California under 42 U.S.C. § 2000 et seq. in that the unlawful conduct complained of and the employment records relevant to such conduct are maintained and administered in the Central District of California.  Venue is also proper under 28 U.S.C. § 1391(e)(1)(2) in the Central District as it is the place where Defendants reside and where a substantial part of the acts or omissions occurred.

**PARTIES**

10.  Plaintiff GUZMAN is a resident of Glendale, California.  He is employed as an Assistant Special Agent in Charge ("ASAC") of the Los Angeles, California office of the U.S. Immigration and Customs Enforcement, Department of Homeland Security.  GUZMAN received his Associate of Arts Degree from

Sacramento City College in criminal justice on January 22, 1986. That same year, on January 26, 1986, GUZMAN began working for the federal government as a border patrol agent. GUZMAN has a top secret security clearance, twenty-five years of law enforcement experience and is one of the highest-ranking Hispanic management officials within ICE for the Central District of California.

11.    Defendant United States of America is subject to answer for wrongs committed in this judicial district.

12.    Defendant DHS is a Department of the United States federal government, has offices throughout the nation, and is subject to answer for wrongs committed in this judicial district.

13.    Defendant ICE is an agency of the United States federal government and is the largest investigative agency of the DHS. The agency was created after the September 11, 2001 terrorist attacks (9/11), by combining the law enforcement investigation branches of the former Immigration and Naturalization Service and the former U.S. Customs Service, to more efficiently enforce the United States' immigration and custom laws and to protect the United States against terrorist attacks. At all relevant times in this action, Defendant ICE worked in conjunction with Defendant DHS in the wrongs committed against Plaintiff in this judicial district.

14.    Defendant DOJ is a Department of the United States federal government, has offices throughout the nation, and is subject to answer for wrongs committed in this judicial district.

15.    Defendant USAO is an agency of the United States federal government and is a component of the Department of Justice. The USAO represents the legal interests of the United States Government in the Central District of California.

16.    Defendant AKROTIRIANAKIS was an agent or employee of the USAO until his resignation from that office in 2013. At all relevant times in this

action, defendant AKROTIRIANAKIS was employed as an Assistant United States Attorney in the Central District of California. Defendant AKROTIRIANAKIS is sued in his individual and official capacity as an Assistant United States Attorney in the Central District of California. In his individual and official capacity, AKROTIRIANAKIS was responsible for ensuring that Plaintiff is not subject to unlawful conduct and he is precluded from ratifying, inciting, aiding, encouraging, abetting, and assisting unlawful acts against Plaintiff.

17.     Defendant NARENSKY was and is employed by ICE at all times relevant to the allegations against him. NARENSKY is sued in his individual and official capacity as an agent of ICE in the Office of Professional Responsibility ("OPR") in Los Angeles, California. In his individual and official capacity, NARENSKY is responsible for ensuring that Plaintiff is not subject to unlawful conduct and he is precluded from ratifying, inciting, aiding, encouraging, abetting, and assisting unlawful acts against Plaintiff.

18.     Defendant FARABEE was and is employed by ICE at all times relevant to the allegations against him. FARABEE is sued in his individual and official capacity as a Resident Agent In Charge of ICE-OPR in Los Angeles, California. In his individual and official capacity, FARABEE is responsible for ensuring that Plaintiff is not subject to unlawful conduct and he is precluded from ratifying, inciting, aiding, encouraging, abetting, and assisting unlawful acts against Plaintiff.

19.     Defendant TRILEVSKY was and is employed by the Office of Inspector General, Department of Homeland Security at all times relevant to the allegations against him. TRILEVSKY is sued in his individual and official capacity as an agent of DHS in the Office of Inspector General ("OIG") in Los Angeles, California. In his individual and official capacity, TRILEVSKY is responsible for ensuring that Plaintiff is not subject to unlawful conduct and he is

precluded from ratifying, inciting, aiding, encouraging, abetting, and assisting unlawful acts against Plaintiff.

20.    Defendant RIVAS was and is employed by the Federal Bureau of Investigation at all times relevant to the allegations against her. RIVAS is sued in her individual and official capacity as a Special Agent of the Federal Bureau of Investigation. In her individual and official capacity, RIVAS is responsible for ensuring that Plaintiff is not subject to unlawful conduct and she is precluded from ratifying, inciting, aiding, encouraging, abetting, and assisting unlawful acts against Plaintiff.

21.    Defendant CLAUDE ARNOLD was and is employed by ICE at all times relevant to the allegations against him. CLAUDE ARNOLD is sued in his individual and official capacity as the Special Agent In Charge of ICE in Los Angeles, California. In his individual and official capacity, CLAUDE ARNOLD is responsible for ensuring that Plaintiff is not subject to unlawful conduct and he is precluded from ratifying, inciting, aiding, encouraging, abetting, and assisting unlawful acts against Plaintiff.

22.    The true names and capacities of DOE Defendants 1 through 10, inclusive, whether individual, corporate, associates or otherwise, are unknown to Plaintiff at the time of filing this Complaint and therefore Plaintiff sues said Defendants under such fictitious names. When their true names and capacities are ascertained, Plaintiff will amend this Complaint by inserting their true names and capacities herein. Plaintiff is informed and believes and thereupon alleges that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and Plaintiff's damages as herein alleged were proximately caused by such Defendants.

23.    Plaintiff is informed and believes, and thereupon alleges, that at all times herein mentioned each of the Defendants was the agent, employee and servant of each of the remaining Defendants, and in doing the things hereinafter

alleged, was acting within the scope of such agency, employment, and servitude, with the knowledge and consent of each of the Defendants. Whenever this Complaint makes references to "Defendant," "Defendants", or a specifically named Defendant, such allegations shall be deemed to mean the acts of the Defendants acting individually, jointly, and/or severally.

## GENERAL ALLEGATIONS

24. In late June 2010, two FBI agents made an unannounced visit to GUZMAN and stated they wanted to ask him questions about "an investigation that he was conducting". The agents then began asking GUZMAN questions about an ongoing investigation being conducted by TRILEVSKY and RIVAS regarding GUZMAN'S personal relationship with Amelia Lopez ("LOPEZ"), a former DHS employee and friend of GUZMAN'S, and also GUZMAN"S knowledge of a DHS investigation of an ICE employee known by the name of "Jacobs" for allegedly selling "green cards" to illegal aliens (herein known as the "Jacobs Investigation"). Unknown to GUZMAN at that time, the interview was being recorded by the FBI agents, supposedly for "law enforcement purposes".

25. On July 3, 2010, LOPEZ contacted GUZMAN and informed him that two federal law enforcement officers, TRILEVSKY and RIVAS, had attempted to force her and coerce her into altering her proposed testimony in the Jacobs Investigation. TRILEVSKY and RIVAS told LOPEZ that they wanted LOPEZ to alter her proposed testimony to say that GUZMAN had improperly disclosed information about the Jacobs Investigation to her. LOPEZ also informed GUZMAN that agents had told her that GUZMAN had been in collusion with Jacobs to sell green cards in order for GUZMAN to maintain his "lavish lifestyle."

26. GUZMAN had no official connection with the Jacobs Investigation other than the fact that GUZMAN supervised all cases being worked by agents under his supervision, and the Jacobs Investigation was one such case. Moreover, GUZMAN had disclosed to his supervisors that he knew LOPEZ, when it was

disclosed that she was a witness in the Jacobs Investigation, and had offered to sever his relationship with her to avoid any appearance of impropriety. GUZMAN was advised by his supervisors that that was not necessary, but that he should simply not discuss the Jacobs Investigation with LOPEZ, and he did not.

27.    On July 6 and July 7 of 2010, GUZMAN filed written reports of the agent's proposal to LOPEZ as "witness tampering" to the OPR offices of both TRILEVSKY and RIVAS. To date, GUZMAN has not been contacted by any agent of any government office to interview him regarding the allegations of witness tampering, and it appears that no investigative action has been taken regarding these serious allegations.

28.    A few days later, GUZMAN informed CLAUDE ARNOLD, ICE Special Agent-in-Charge of the Los Angeles office, and agent FARABEE, the Resident Agent-in-Charge of the local ICE Office of Professional Responsibility ("OPR") in Los Angeles, of the witness tampering allegation. On or about July 20, 2010, GUZMAN also informed ICE-OPR agent Kara Careaga of the witness tampering allegations and provided her with a copy of the reports he had made to FBI-OPR and DHS-OIG advising her that he had not been contacted regarding those serious complaints. After reviewing the complaint forms, she expressed surprise and told GUZMAN that he should know that agent TRILEVSKY was "a good person and a friend of ours".

29.    Within two to three weeks after GUZMAN'S report of the witness tampering allegations, an "anonymous" tip was made to the ICE/OPR Joint Intake Center alleging that GUZMAN had been lying throughout his career about having received a degree. On August 25, 2010, the anonymous complaint was then forwarded to the OPR offices in Los Angeles. Relying on this anonymous tip, and rather than conducting an administrative personnel action, Defendants DOJ, DHS, ICE and USAO initiated a criminal investigation under 18 U.S.C. § 1001 alleging that GUZMAN made a single material misstatement in his security questionnaire

about having claimed to receive an Associate of Arts Degree from Sacramento City College, twenty four years earlier, in 1986.

30.    On or around December 10, 2010, AKROTIRIANAKIS applied for and obtained a federal search warrant for GUZMAN's office regarding the diploma from SCC. The warrant included a probable cause affidavit from NARENSKY including a statement that "Supervisor Goff [the current Supervisor of Admissions and Records at SCC] told me that ASAC GUZMAN does not have an A.A. degree from SCC". NARENSKY also stated that, "[t]here are transcripts from SCC in ASAC GUZMAN's PSF [Personnel Security File] which state that ASAC GUZMAN was not awarded a degree from SCC". Both statements were false. The search warrant and affidavit were publicly filed and not sealed in order to protect GUZMAN's reputation while the matter of his college degree was investigated.

31.    However, GUZMAN'S SCC transcripts did not contain such a statement and in fact, his PSF contained a copy of his diploma. Further, the alleged statements attributed to Supervisor Goff in NARENSKY's affidavit were later directly contradicted in a sworn statement given by Supervisor Goff and in grand jury proceedings whereby Supervisor Goff indicated that she had made it clear to NARENSKY that the absence of a particular record does not mean that Mr. Guzman is not a graduate of Sacramento City College. Further, NARENSKY had failed to disclose exculpatory information indicating that the discrepancy in the SCC college records had been addressed in a 1999 investigation regarding GUZMAN's security clearance.

32.    On December 8, 2010, Iwona Horyn ("HORYN"), OPR Security Section Chief in Dallas, Texas, sent GUZMAN an electronic message requesting that he provide OPR with a copy of his SCC diploma. GUZMAN complied with the request and sent a copy of the degree to HORYN on December 10, 2010, via a facsimile machine inside the ICE building housing GUZMAN's office.

33.    After AKROTIRIANAKIS and NARENSKY obtained the federal search warrant based upon these false assertions, agent FARABEE and another ICE employee, Shane Folden executed the search warrant at GUZMAN's office. During the execution of the search warrant, FARABEE seized GUZMAN's original diploma and a stamped envelope, sent by SCC to GUZMAN, and provided GUZMAN forms indicating the seizure of the documents. FARABEE retained the original diploma, the only piece of evidence that would exonerate GUZMAN.

34.    On January 14, 2011, GUZMAN filed a complaint with the Equal Employment Opportunity (EEO) Commission. A formal EEO Complaint was filed on March 31, 2011 and subsequently amended on July 15, 2011. On March 22, 2013, two years and a month after the initial complaint was filed, the administrative judge dismissed two of GUZMAN's claims as a result of those claims being submitted as part of the Original Complaint pending before this Honorable Court at the time, and after the Department of Homeland Security, Immigration and Customs Enforcement, filed a Motion to have those and other allegations dismissed because they had been filed as part of the Original Complaint.

35.    On the day that the warrant was served and before any hearing or investigation regarding the findings of the warrant could be had, Defendant CLAUDE ARNOLD directed to GUZMAN a memorandum bearing that day's date informing him that he was placed on "non-duty" administrative leave with immediate effect, revoking his authorization to carry government credentials identifying him as an ICE employee, and revoking his authorization to enter any ICE facility without prior approval. The memorandum had been prepared and signed in advance of the execution of the search warrant. CLAUDE ARNOLD subsequently claimed in a sworn affidavit, dated September 16, 2011, that he suspended GUZMAN because GUZMAN had provided a "forged degree to a background investigator." To date, GUZMAN has remained on administrative

1  leave or assigned to strictly administrative duties, a period in excess of three and
2  one-half years at the direct and specific orders of defendant ARNOLD.

3       36.    The investigation over the fraudulent issue of the degree continued at
4  a relentless pace for several months, leading to GUZMAN having to file a motion
5  for the return of the original diploma in order to exonerate himself from the false
6  claims against him.

7       37.    After obtaining the original diploma and corresponding envelope,
8  NARENSKY submitted the documents for examination by the DHS Forensic
9  Document Laboratory ("FDL").    On or about February 15, 2011, the FDL
10 prepared a preliminary report concluding that the diploma appeared to be
11 authentic. In April 2011 the FDL issued a comprehensive report confirming the
12 genuineness of GUZMAN's diploma, and sent that report to defendant
13 NARENSKY.

14      38.    Despite this knowledge, AKROTIRIANAKIS also continued to
15 threaten GUZMAN with indictment for making false statements as soon as the
16 time of the grand jury could be engaged.    On or about April 11, 2011,
17 AKROTIRIANAKIS stated he would be willing to close the "investigation" in
18 exchange for GUZMAN's retirement from government services.

19      39.    AKROTIRIANAKIS and NARENSKY continued to conduct a
20 federal grand jury investigation and questioned witnesses, including GUZMAN's
21 siblings, and threatened the witnesses with grand jury subpoenas if they refused to
22 provide information directly to the agents about what they knew, heard, or thought
23 about GUZMAN'S educational attainments and other unrelated aspects about
24 GUZMAN'S private life.

25      40.    Thereafter, on March 25, 2011, the search warrant and affidavit of
26 probable cause were leaked to an internet publication called "The Smoking Gun".
27 The article included additional inflammatory material concerning GUZMAN that
28 was not part of the affidavit, but could have only been supplied by someone with a

comprehensive knowledge of the years-long harassment that GUZMAN has undergone at the hands of the predecessor agency of DHS and ICE, the Immigration and Naturalization Service, which culminated in a successful federal lawsuit brought by GUZMAN against the United States in 1996.

41.    After "The Smoking Gun" article was published, on April 1, 2011, a Los Angeles radio talk-show picked up the story and went on to publicly humiliate GUZMAN by making defamatory statements regarding GUZMAN in a segment of the "John and Ken Show".

42.    On September 28, 2011, the Chief of the Criminal Division of the USAO convened a meeting with GUZMAN and his attorney.  The stated purpose of the meeting was to allow the USAO to come to a charging decision in the criminal investigation by the end of September 2011.  During that two hour meeting to dispose of the false statements criminal investigation not a single question was asked regarding GUZMAN's education background or his claim to be a graduate of SCC.

43.    In April 2012, sixteen (16) months after the execution of the search warrant based upon an "anonymous tip" and more than a year after the government's own forensic experts had concluded that GUZMAN's SCC diploma was, in fact, genuine, a decision finally was reached and the USAO declined prosecution of GUZMAN for having allegedly lied about his educational background.  Despite the declination of prosecution, ICE has continued to keep GUZMAN on suspension upon a claim that his educational background remained "under investigation".

44.    On June 29, 2012, NARENSKY directed GUZMAN to appear for questioning.  Accompanied by his attorney, Michael Zweiback, GUZMAN appeared for questioning. ZWEIBACK was immediately ordered away from, and escorted out of the OPR offices in Long Beach, CA. NARENSKY then subjected GUZMAN to an abusive two hour interrogation in which GUZMAN was

repeatedly humiliated and threatened while being questioned about his college degree and whether he intended to sue FARABEE and others.

45.    On December 10, 2012, GUZMAN filed a Complaint in the United States Central District Court.  The court subsequently dismissed the complaint without prejudice in September 2013, inter alia, indicating that GUZMAN had not exhausted his administrative remedies.

46.    On December 17, 2012, a DHS-ICE Disciplinary and Adverse Action Panel (DAAP) used NARENSKY's report to propose that GUZMAN be removed from his position and from government service for "Lack of Candor" in claiming to have received a college degree from SCC.  In February of 2013, GUZMAN, through his attorney, provided documents evidencing GUZMAN's SCC degree and the malice and misconduct by ICE-OPR.    However, the harassment of GUZMAN did not stop.

47.    On March 1, 2013, CLAUDE ARNOLD directed the service of a letter to GUZMAN dismissing the DAAP removal proposal and instructing him to return to duty with ICE after having placed him on non-duty administrative leave for twenty-seven (27) months.

48.    On March 8, 2013, GUZMAN filed a formal complaint with the DHS-Office of Equal Employment Opportunity after having been placed in a non-duty status for more than two years.  As of the filing of this complaint ICE has not completed its investigation of the complaint.

49.    On October 21, 2013 GUZMAN, as required by the provisions of the Federal Tort Claims Act relating to the exhaustion of administrative remedies, filed Administrative Claims for money damages in sum certain using Standard Form 95 with the following federal agencies:    (1) Office of Workers' Compensation Programs (OWCP) Division of Federal Employees' Compensation; (2) U.S. Merit Systems Protection Board; (3) Complaints Examining Unit, US. Office of Special Counsel; (4) Federal Tort Claims Act section, Torts Branch, Civil Division, U.S.

Department of Justice; (5) U.S. Department of Homeland Security, Office of the General Counsel; and (6) Office of the General Counsel, U.S. Immigration & Customs Enforcement, U.S. Department of Homeland Security.  None of the government agencies served with the Administrative Claims have substantively responded to the Administrative Claims.

50.    On March 12, 2014, GUZMAN was served with another proposal to remove him from his position and from government service.  The proposal was based on a single closing report of the investigation prepared by ICE-OPR agent JOSEPH ARNOLD.  All other reports of investigation, including the initial report containing the predication, were omitted from the report.  The report and corresponding exhibits were submitted by JOSEPH ARNOLD on August 30, 2013. The investigation was predicated on information obtained in June, July, and August of 2012, by agents NARENSKY, WALSH, CAREAGA, and others, and consists primarily of the statement of ICE criminal investigator Mark Abend, an admitted perjurer, to the effect that GUZMAN had planted a microphone under his own desk in the Santa Ana INS office in 2002.  That allegation had been investigated by ICE-OPR agents in 2004-2005 and GUZMAN had been cleared of any involvement.  There were no reports of investigation by agents NARENSKY or any other ICE-OPR agents contained in JOSEPH ARNOLD's closing report.

51.    Defendant CLAUDE ARNOLD, who had placed GUZMAN on administrative leave months because for 27 an alleged "integrity" issue, did not suspend Abend despite his self-confessed perjury.  Instead, CLAUDE ARNOLD reassigned Abend to another office to other duties reviewing complaints of fraud. Furthermore, CLAUDE ARNOLD also permitted Abend to remain a member of the Los Angeles Rapid Response Team.  In contrast, despite the DHS-FDL authentication of his college diploma, CLAUDE ARNOLD had earlier directed that GUZMAN remain on non-duty administrative leave.

52. The "unrelated misconduct" matter to which Defendant Claude Arnold referred in his March 1, 2013 letter returning GUZMAN to duty was, in fact, the "microphone" investigation that had been concluded in 2005 and was brought back to life by Abend's claim that he (Abend) had lied in his previous under-oath testimony in that investigation, and was the subject of the second DAAP proposal to remove GUZMAN from his position and from federal employment.

53. Despite several government records evidencing the fact that the allegations of witness tampering regarding agents TRILEVSKY and RIVAS, were reported to the DHS-OIG Internet Hotline, the FBI Internet Hotline, ICE-OPR agent CAREAGA, and ICE-OPR-SIU agents the DHS claimed to have no record of the complaint. On June 16, 2014, GUZMAN received a letter, via email, from the DHS – Freedom of Information Act Office in Washington, D.C., claiming that there was no record of the allegation of witness tampering that GUZMAN submitted on July 6, 2010 in the agency's records.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE UNITED STATES CONSITUTION
## (BIVENS CLAIM)
## (Against All Defendants)

54. Plaintiff incorporates by this reference the preceding allegations of this complaint and the allegations set forth in the remainder of the complaint.

55. Due to GUZMAN's whistleblowing activity concerning agents TRILEVSKY and RIVAS, the Defendants DOJ, DHS, and ICE retaliated against GUZMAN by launching a baseless investigation against him, predicated entirely upon an unsubstantiated "anonymous tip", which should have been resolved as soon as they obtained the original diploma reflecting his Associate of Arts degree.

56.    However, rather than launch an administrative investigation, Defendants DOJ, DHS, ICE and USAO, AKROTIRIANAKIS and NARENSKY decided to launch a criminal investigation under 18 U.S.C. § 1001.

57.    In the course of the criminal investigation, NARENSKY made false statements in an affidavit for probable cause.  Despite the fact that NARENSKY's affidavit was later contradicted by Supervisor Goff, and AKROTIRIANAKIS became aware of said contradiction, AKROTIRIANAKIS continued to investigate GUZMAN and offered to stop the "investigation" in exchange for GUZMAN's retirement for government service.

58.    The interrogation and harassment of GUZMAN continued relentlessly for months, despite the fact that Defendants had already had the original seized diploma authenticated and in their hands shortly after the criminal investigation was launched.  Rather than accept the truth, Defendants continued to interview GUZMAN's family and friends, and served them with grand jury subpoenas so that GUZMAN could be humiliated and shamed.

59.    Thereafter, the defamatory and abusive information was leaked to "The Smoking Gun" and a Los Angeles based radio station, further causing GUZMAN and his family pain and humiliation.

60.    Defendants FARABEE, AKROTIRIANAKIS and NARENSKY acted within the scope of their employment and with the consent and knowledge of the DHS, ICE, DOJ, and USAO.

61.    The acts and conduct of the Defendants as alleged above constitute a violation of Plaintiff's Fourth Amendment rights under the United States Constitution, and said Defendants are liable for Plaintiff's injuries and damages herein described.  Specifically, obtaining the federal search warrant in a public manner, rather than under seal, was a part of the plan to retaliate against GUZMAN for the reporting the complaint of witness tampering by TRIVELSKY and RIVAS.  Relying on an "anonymous tip" and false statements by NARENSKY

in the affidavit for search warrant, Defendants caused GUZMAN's office to be searched and his diploma to be seized, which constitutes a violation of his right to be free from unreasonable and unlawful seizure under the Fourth Amendment.

62. In depriving Plaintiff of his rights under the United States Constitution and under the laws of the State of California, the Defendants demonstrate malice, oppression, and a willful disregard for the rights of Plaintiffs. Defendants exhibited a reckless indifference and wanton disregard for Plaintiff's rights and as a direct result, Plaintiff has suffered and continues to suffer substantial losses related to the loss of wages, loss opportunities for promotion or other advancement, and is entitled to recover compensatory and punitive damages, costs and expenses and attorney's fees.

## SECOND CAUSE OF ACTION
## DEPRIVATION OF LIBERTY AND PROPERTY INTEREST IN FUTURE EMPLOYMENT (BIVENS CLAIM)
### (Against All Defendants)

63. Plaintiff incorporates by reference the preceding allegations of this complaint and the allegations set forth in the remainder of the complaint.

64. On December 10, 2010, due to defendant NARENSKY's false statements which were part of a publicly filed federal search warrant, defendant ARNOLD'S suspension of GUZMAN on the same day the warrant was executed, and Defendants' failure to expedite the investigation (which should not have been a criminal investigation to begin with), defendants' statements and actions violated GUZMAN's Fifth Amendment rights to liberty and property under the Due Process Clause and GUZMAN was injured in respect to his office, profession, trade and business.

65. As GUZMAN is an employee of the ICE and DHS, defendants' actions and statements reduced GUZMAN's future prospects for job enhancement and job advancement because defendants' actions and statements implied that